UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 20-cr-20144 |
| v. | Hon. Linda V. Parker |
| | VIO.: 18 U.S.C. § 1349 |
| D-1 AUDAY MAKI, R.Ph., | 18 U.S.C. § 1347 |
| D-2 EDUARDO ABELLANA, M.D., | 18 U.S.C. § 2 |
| | 18 U.S.C. § 981 |
| Defendants. | 18 U.S.C. § 982 |

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

FILED
SEP -9 2021
CLERK'S OFFICE
DETROIT

### GENERAL ALLEGATIONS

At all times relevant to this Superseding Indictment:

**The Medicare and Medicaid Programs**

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were age 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare "Part D" subsidized the costs of prescription drugs for Medicare beneficiaries in the United States. Part D benefits were administered by private insurance plans, often referred to as Medicare drug plan "sponsors," that were reimbursed by Medicare through CMS.

4. Beneficiaries obtained Part D benefits in two different ways: they either joined a Prescription Drug Plan which covered only prescription drugs, or they joined a Medicare Advantage Plan that covered both prescription drugs and medical services.

5. Under Part D, a pharmacy was authorized to contract with multiple private insurance plans, which provided Medicare Part D coverage, or their Pharmacy Benefit Managers and submit claims for prescriptions filled and dispensed to Medicare Part D beneficiaries, but also was authorized to submit claims for payment to a private insurance plan with which it did not have a contract and receive reimbursement.

6. Typically, a Medicare beneficiary enrolled in a Medicare Part D plan filled their prescription at a pharmacy utilizing their Medicare Part D plan coverage to pay for the prescription. The pharmacy then submitted the prescription claim for reimbursement to the Medicare Part D beneficiary's Part D plan under the

beneficiary's Health Insurance Claim Number and/or Medicare Plan identification number.

7. Medicare Part B was a medical insurance program that covered, among other things, certain physician home and office visits, and other health care benefits, items, and services, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

8. By becoming a participating provider in Medicare Part B, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

9. Upon certification, the medical provider, whether a clinic or an individual, was assigned a National Provider Identifier ("NPI"). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the NPI assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

3

10. Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers were only authorized to submit claims to Medicare for services they rendered and were further required to maintain patient records to verify that the services were provided as described on the claim.

11. The Michigan Medicaid program ("Medicaid") was a federal and state funded program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including Michigan. Individuals who received benefits under Medicaid were similarly referred to as "beneficiaries."

12. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were reimbursements to pharmacies for the provision of prescription drugs. Generally, Medicaid covered these costs if, among other requirements, they were medically necessary and ordered by a physician. Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

13. Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### The Private Health Insurance Program

14. Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan. BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

15. BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

16. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Pharmacy Benefit Managers

17. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

18. After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the

5

health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

19. CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors) and Medicaid health plans. Express Scripts managed prescription drug benefits for BCBS. CVS Caremark, OptumRx, and Express Scripts processed and adjudicated claims outside the state of Michigan.

**Relevant Entities**

20. City Drugs Pharmacy, Inc. ("City Drugs") was a pharmacy and Michigan corporation located at 11190 Gratiot Ave., Detroit, Michigan 48213.

21. Park Family Health Care, P.C. ("Park Family") was a medical clinic located at 11180 Gratiot Ave., Suite C, Detroit, Michigan 48213.

**Defendants and Related Individuals**

22. Defendant AUDAY MAKI, a resident of Wayne County, Michigan, was a licensed pharmacist in the State of Michigan who owned and was the pharmacist-in-charge of City Drugs.

23. Defendant EDUARDO ABELLANA, a resident of Wayne County, Michigan, was a physician licensed in the State of Michigan who practiced at Park

Family and prescribed drugs to Medicare and Medicaid beneficiaries that were purportedly filled at City Drugs.

24. Individual A, a resident of Macomb County, Michigan, was a licensed pharmacist in the State of Michigan and a partial owner of City Drugs.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)
### D-1 AUDAY MAKI
### D-2 EDUARDO ABELLANA

25. Paragraphs 1 through 24 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

26. From at least in or around 2010, and continuing through in or around 2018, the exact dates being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and elsewhere, AUDAY MAKI and EDUARDO ABELLANA did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

(a) to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid

health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services; and

(b) to violate Title 18, United States Code, Section 1343, that is, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, having devised a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice.

## Purpose of the Conspiracy

27. It was the purpose of the conspiracy for AUDAY MAKI, EDUARDO ABELLANA, and their co-conspirators to unlawfully enrich themselves and others by, among other things: (a) submitting, and causing the submission of, through interstate wire communications, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to

Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendants and others.

### Manner and Means of the Conspiracy

28. The manner and means by which the defendants and others sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

29. AUDAY MAKI and others maintained an NPI for City Drugs in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

30. AUDAY MAKI and others, on behalf of City Drugs, entered into pharmacy provider agreements with CVS Caremark and Express Scripts, among other PBMs.

31. AUDAY MAKI, Individual A, and others directed EDUARDO ABELLANA to write prescriptions for expensive, medically unnecessary medications to be filled at City Drugs.

32. EDUARDO ABELLANA wrote prescriptions without examining beneficiaries and without notifying beneficiaries that he had prescribed these medications.

33. EDUARDO ABELLANA gave these medically unnecessary prescriptions directly to AUDAY MAKI and Individual A to purportedly dispense at City Drugs.

34. AUDAY MAKI, Individual A, and others submitted claims to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans for the prescriptions written by EDUARDO ABELLANA, even though they were often medically unnecessary and City Drugs lacked the inventory to dispense these medications.

35. EDUARDO ABELLANA received kickbacks in the form of cash, gift certificates, and copay waivers from AUDAY MAKI and Individual A in exchange for writing medically unnecessary prescriptions.

36. Between 2010 and 2018, AUDAY MAKI and others, through City Drugs, submitted and caused the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors totaling not less than approximately $1,283,011 for medications prescribed by EDUARDO ABELLANA that were purportedly medically necessary and dispensed, when, in fact, such medications were not medically necessary and not actually dispensed.

37. Between 2010 and 2018, AUDAY MAKI and others, through City Drugs, submitted and caused the submission of false and fraudulent claims to Medicaid and Medicaid health plans totaling not less than approximately $5,056,477 for medications prescribed by EDUARDO ABELLANA that were purportedly medically necessary and dispensed, when, in fact, such medications were not medically necessary and not actually dispensed.

38. During the approximate time period of January 2011 to February 2018, AUDAY MAKI and others, through City Drugs, submitted and caused the submission of false and fraudulent claims to BCBS totaling not less than approximately $42,872.

39. AUDAY MAKI and EDUARDO ABELLANA personally profited from their participation in the scheme by receiving fraud proceeds for the personal use and benefit of themselves and others directly or indirectly through interstate wires.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

### D-1 AUDAY MAKI
### D-2 EDUARDO ABELLANA

40. Paragraphs 1 through 24 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

41. From at least in or around 2010, and continuing through in or around 2018, in Wayne County, in the Eastern District of Michigan, and elsewhere, AUDAY MAKI, EDUARDO ABELLANA, and others, known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

42. It was the purpose of the scheme and artifice for the defendants and their co-schemers to unlawfully enrich themselves through the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans for medically unnecessary, and non-dispensed prescription medication and other services.

### The Scheme and Artifice

43. Paragraphs 28 through 39 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

44. On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, AUDAY MAKI and EDUARDO ABELLANA did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in that AUDAY MAKI and EDUARDO ABELLANA submitted and caused the submission of false and fraudulent claims or payment and falsely represented that City Drugs provided prescription medications to Medicare and Medicaid beneficiaries, including the Medicaid beneficiaries below, as described in Paragraphs 28 to 39 of this Superseding Indictment, with each execution set forth below forming a separate count:

| Count | Defendant(s) | Beneficiary | Approx. Date Purportedly Dispensed | Prescription Medication Description | Approx. Paid Amount |
|---|---|---|---|---|---|
| 2 | AUDAY MAKI/ EDUARDO ABELLANA | K.M. | 1/11/2018 | Betamethasone | $96.58 |
| 3 | AUDAY MAKI/ EDUARDO ABELLANA | P.M. | 3/19/2018 | Lyrica | $439.44 |
| 4 | AUDAY MAKI/ EDUARDO ABELLANA | P.M. | 3/19/2018 | Acyclovir | $14.82 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

**CRIMINAL FORFEITURE**

45. The above allegations contained in this Superseding Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which either AUDAY MAKI or EDUARDO ABELLANA has an interest, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461.

46. Upon conviction of violations alleged in this Superseding Indictment, AUDAY MAKI and EDUARDO ABELLANA shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, pursuant to 18 U.S.C. § 981(a)(1)(C), together with Title 28 U.S.C. § 2461, and (b) any property, real or personal, that

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

47.   *Money Judgment*:  The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the value of the property subject to forfeiture.

48.   *Substitute Assets*:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.)   cannot be located upon the exercise of due diligence;

    b.)   has been transferred or sold to, or deposited with, a third party;

    c.)   has been placed beyond the jurisdiction of the Court;

    d.)   has been substantially diminished in value; or

    e.)   has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendant, up to the value of the forfeitable property described above.

                                                            THIS IS A TRUE BILL.

                                                            s/Grand Jury Foreperson
                                                            Grand Jury Foreperson

SAIMA S. MOHSIN
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

ALLAN J. MEDINA
Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

s/Regina R. McCullough
REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

s/Claire T. Sobczak
CLAIRE T. SOBCZAK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 591-5418
Email: Claire.Sobczak@usdoj.gov

s/John J. McCormack
JOHN J. MCCORMACK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 262-7011
Email: John.McCormack.IV@usdoj.gov

Dated: September 9, 2021

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>20-cr-20144 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: |

**Case Title:** USA v. Auday Maki, et al.

**County where offense occurred :** Wayne County

**Check One:** ☒ Felony  ☐ Misdemeanor  ☐ Petty

___ Indictment/ ___ Information --- **no** prior complaint.
___ Indictment/ ___ Information --- based upon prior complaint [Case number: _____]
_✓_ Indictment/ ___ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 20-cr-20144     **Judge:** Linda V. Parker

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| D-1 Auday Maki,<br>D-2 Eduardo Abellana | 18 U.S.C. § 1347 and 2,<br>18 U.S.C. § 1349 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 9, 2021
Date

John J. McCormack, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: 202-262-7011
Fax:    (313) 226-0816
E-Mail address: John.McCormack.IV@usdoj.gov
Attorney Bar #: MA 676073, NH 19569

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.