UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                  Criminal Case No. 20-cr-20144

v.                              Honorable Linda V. Parker

D-2 EDUARDO ABELLANA, M.D.

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION IN LIMINE (ECF NO. 52) AND GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S UNOPPOSED MOTIONS IN LIMINE (ECF NOS. 51, 77, 89)

These matters are before the Court on the parties' motions *in limine*.

Defendant Eduardo Abellana ("Defendant") has filed one motion *in limine* to

preclude testimony from alleged co-conspirator Hassan Abdallah ("Abdallah"),

concerning an alleged conspiracy between himself and Abdallah to commit fraud

at Eastside Pharmacy, a prelude to the alleged conspiracy identified in the

indictment.  (ECF No. 52.)

The Government has filed six, unopposed, motions *in limine*[1], seeking to: (1)

preclude Defendant from blaming Medicare or Medicaid for his alleged fraud, (*see*

---

[1] The Government filed its motion *in limine* to introduce evidence of his gambling
on July 31, 2023.  (*See* ECF No. 77).  In accordance with the local rules,

ECF No. 51); (2) exclude evidence from a resolved civil action related to

Government witness Special Agent Michael Pemberton ("SA Pemberton"), (*see*

*id.*); (3) admit evidence of Defendant's gambling activity, (*see* ECF No. 77); (4)

preclude Defendant from offering evidence of legitimate billing practices, (*see*

ECF No. 89); (5) preclude reference to a resolved civil action in the Virgin Islands

(the "Virgin Islands" action), (*see id.*); and (6) preclude evidence or testimony on

discovery disputes, potential punishments, or defense counsel's personal opinions

of Defendant, (*see id.*).

## I.   Factual Background

Defendant has been charged in a five-count Second Superseding Indictment

with: (I) Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of

18 U.S.C. § 1349; (II)-(IV) Health Care Fraud, in violation of 18 U.S.C. §§ 1347

and 2; and (V) Conspiracy to Defraud the United States and Receive Kickbacks, in

---

Defendant's response was due fourteen days after service of the motion, on August
14, 2023.  (*See* LCrR 12.1(a) ("Motions in criminal cases shall be filed in
accordance with the procedures set forth in LR 7.1"); *see also* LR 7.1(e)(1)(A)
("Responses . . . must be filed within 14 days after service of the motion.").)
Defendant filed a response on April 28, 2024.  (ECF No. 93.)  Defendant's
response is untimely and will not be considered.  Nevertheless, the Court has
reviewed Defendant's response and finds it meritless.

violation of 18 U.S.C § 371.  (ECF No. 72.)  This matter is scheduled for trial on May 14, 2024.  (ECF No. 83.)

## II.    Standard of Review

District courts have broad discretion over matters involving the admissibility of evidence at trial.  *See United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  "A ruling on a motion is no more than a preliminary, or advisory opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).  A court may therefore alter its ruling during trial.  *See Luce*, 469 U.S. at 41-42.  Motions *in limine* may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Ind. Ins. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  "The rules regarding relevancy, however, are quite liberal." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998).  Under the Federal Rules of Evidence, "[e]vidence is relevant . . . if it has *any* tendency to make a fact more or less probable than it

would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The Court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible if there is a danger of unfair prejudice, not mere prejudice. *See Robinson*, 149 F.3d at 514-15 (citing Fed. R. Evid. 403). "Virtually all evidence is prejudicial or it isn't material." *Id.* at 515 (quoting *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983)) (additional citation omitted).

### III. Defendant's Motion *in Limine*

On December 29, 2022, the Government provided notice of its intent to admit evidence that is "inextricably intertwined with, and which provides background context for," Defendant's charged conduct. (ECF No. 49.) Specifically, the Government seeks to introduce evidence that a kickback

4

relationship between Defendant and Abdallah originated at a separate pharmacy, Eastside Pharmacy ("Eastside"), and continued into their relationship at the pharmacy charged in the indictment, City Drugs Pharmacy ("City Drugs").  (*Id.* at PageID. 187-88.)[2]  The Government alleges that Defendant and Abdallah had a relationship where Abdallah would pay Defendant $1.00 for each prescription that was filled at Eastside.  (*Id.* at PageID. 188.)  It further alleges that this relationship began at Eastside and continued at City Drugs.  (*Id.*)

For support, the Government attaches five interview reports to its motion. (*See* ECF Nos. 55-1, 55-2, 55-3, 55-4, 55-5.)  These interviews allege that Abdallah opened Eastside between 2000-2002 and began committing health care fraud approximately six months to a year after opening.  (ECF No. 55-1 at PageID. 276.)  They further allege that Defendant and Abdallah's relationship started in approximately 2012, as Abdallah was familiar with Defendant and the prescriptions that Defendant wrote to be filled at Eastside.  (*Id.* at PageID. 278. (alteration added) ("Abdallah stated that he (Abdallah) initiated a relationship with

---

[2] While the Superseding Indictment (ECF No. 22) did not charge Defendant with a kickback conspiracy in violation of 18 U.S.C § 371, the Government has since filed the Second Superseding Indictment, charging him with a kickback conspiracy in violation of 18 U.S.C § 371. (ECF No. 72.)  The Second Superseding Indictment alleges from approximately 2010 through approximately July 2018, Defendant received kickbacks in the form of cash on a monthly basis and gift certificates from Abdallah in exchange for writing prescriptions for medications that were to be filled at City Drugs.  (*Id.* ¶ 49.)

[Defendant] by calling him from Eastside in approximately 2012").)  As part of the conspiracy, Defendant would allegedly change prescriptions, as requested by Abdallah, to increase insurance reimbursements.  (*Id.* at PageID. 279.)  Abdallah, allegedly, opened City Drugs next door to Defendant's office so they could be close and so no other pharmacy could move in.  (*Id.*)  The Government alleges that the conspiracy of paying Defendant $1.00 per prescription filled at Eastside carried over into City Drugs.  (*Id.* at PageID. 278.)  The Government also alleges that Defendant was a partner in City Drugs and received "dividends" or "profit" checks from the pharmacy.  (*See* ECF No. 55-6.)

The Government seeks to introduce this evidence of the Eastside conspiracy as: (1) *res gestae*, or inextricably intertwined background evidence; or (2) alternatively, permissible under Federal Rule of Evidence 404(b) as evidence of intent, knowledge, and absence of mistake.  (ECF No. 49 at PageID. 188-89.)

Defendant seeks to exclude this evidence.  (ECF No. 52.)  Defendant argues that: (1) the alleged conspiracy at Eastside is separate and distinct from the alleged conspiracy at City Drugs (*see id.* at PageID. 207); (2) Abdallah was charged in a separate indictment with conspiracy to commit fraud at Eastside and these cases are not companion cases under the Local Rules, therefore, they cannot be inextricably intertwined, (*see id.* at PageID. 208); and (3) the alleged conspiracy at

Eastside is not admissible as an "other act" under Rule 404(b) (*see id.* at PageID. 209-13.)[3]

As it relates to Rule 404(b), Defendant argues that: (1) there is not sufficient evidence that the "other act" occurred (*see id.* at PageID. 209); (2) the evidence is being offered for propensity purposes, (*see id.* at PageID. 210); and (3) the evidence should be excluded under Federal Rule of Evidence 403 (*see id.* at PageID. 211.)  Defendant further argues that there is a statute of limitations defense to the introduction of this evidence.  (*Id.* at PageID. 212.)

In opposition, the Government argues that: (1) the Eastside and City Drugs' conspiracies are so closely related that they functionally constitute continuations of the same scheme (*see* ECF No. 55 at PageID. 267); (2) there is sufficient evidence of the Eastside conspiracy (*see id.* at PageID. 270); (3) the Eastside conspiracy is offered for a proper purpose under Rule 404(b) (*see id.* at PageID. 270-71); (4) evidence of the Eastside conspiracy is more probative than prejudicial (*see id.* at

---

[3] Defendant also requests that the jury be instructed on the issue of material variance from the indictment based on proof of multiple conspiracies.  (ECF No. 52 at PageID. 208-09.)  The Government did not respond to Defendant's request.  "A material variance occurs when the terms charged in an indictment are unchanged but the evidence presented at trial proves facts that are materially different from those alleged in the indictment."  *United States v. Burt*, No. 06-20582, 2008 WL 2858426, at *1 (E.D. Mich. July 23, 2008) (citing *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984)).  Given that the indictment, which serves as a basis for this motion, has been superseded with a kickback conspiracy count in the Second Superseding Indictment (ECF No. 72), the Court will reserve its decision regarding a jury instruction on this issue.

PageID. 271); and (5) there are no statute of limitations issues (*see id.* at PageID. 272.)

A. *Res Gestae*

*Res gestae* evidence is background evidence of a defendant's other acts that are "inextricably intertwined with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citations omitted). "Proper [*res gestae*] evidence has a causal, temporal, or spatial connection with the charged offense." *Id.* (alteration added). Such background evidence does not fall under the purview of Federal Rule of Evidence 404(b) for prior bad acts evidence because it does not constitute a wholly separate act—it typically arises from the same event, forms an integral part of a witness's testimony, or is directly probative of, completes the story of, or is a prelude to the charged offense. *Id.* (citation omitted).

However, the principle of *res gestae* "does not allow a party to evade 404(b) by introducing any and all other act evidence." *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012) (citation omitted). As such, courts must place "severe limitations as to 'temporal proximity, causal relationship, or spatial connections'" to avoid rendering Rule 404(b)'s protections meaningless. *Id.* at 698 (quoting *Hardy*, 228 F.3d at 749).

In this case, evidence of the previous kickback relationship, which started between Defendant and Abdallah at Eastside, and continued to City Drugs, is

permissible background evidence that is inextricably intertwined with the allegations in the Second Superseding Indictment.  This evidence shows that Defendant and Abdallah engaged in a kickback relationship at Eastside for $1.00 per prescription, which continued into their relationship at City Drugs.  It further shows that the location of City Drugs was chosen to be close to Defendant's office to continue the Eastside kickback conspiracy.  Evidence of the Eastside conspiracy "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense . . . [and] completes the story of the charged offense."  *Id.* (alterations added) (quoting *Hardy*, 228 F.3d at 748).

As a result, the evidence of the Eastside conspiracy is inextricably intertwined with the events in the indictment.  The fact that this matter is not a companion case with another matter does not change the nature of the evidence of the Eastside conspiracy and its relation to the conspiracy charged in the indictment.  Further, because it is not an "other act," it does not fall under the purview of Federal Rule of Evidence 404(b).

Lastly, Defendant argues that there is a statute of limitations issue with the expected testimony of Abdallah.  (*See* ECF No. 52 at PageID. 212 (alteration added) ("Because [Defendant] anticipates the government will present evidence of conduct on both sides of September 9, 2016, [Defendant] intends to press a statute of limitations defense").)  It is unclear to the Court whether this is an argument for

dismissal of the conspiracy count or exclusion of Abdallah's testimony based on the statute of limitations. (*See id.* at PageID. 213 (alteration added) ("Evidence of an alleged conspiracy at Eastside Pharmacy between [Defendant] and Abdallah, which allegedly occurred before and after September 9, 2016, will create the potential for further confusion concerning statute of limitations issues and invite conviction for an uncharged crime.")

As an initial matter, the statute of limitations on a violation of 18 U.S.C. § 1349 is five years. *See United States v. Beasley*, No. 12-20030, 2014 WL 1847406, at *1 (E.D. Mich. May 8, 2014) (citing 18 U.S.C. § 3282(a)). Defendant was indicted on September 9, 2021, making the statute of limitations period between September 9, 2016, to September 9, 2021. "Because a § 1349 conspiracy does not have an overt act requirement, 'the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period.'" *Id.* at *2 (quoting *United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011), *cert den.*, 565 U.S. 1115 (2012)).

Counts II-IV allege that Defendant submitted three false claims in 2018. (*See* ECF No. 22 at PageID. 90; *see also* ECF NO. 72 at PageID. 540.) This is within the statute of limitations period of both the Superseding Indictment (ECF No. 22) and the Second Superseding Indictment (ECF No. 72.) Further, "the duration of the scheme to defraud is a question of fact for the jury." *Beasely*, 2014

WL 1847406, at *1 (quoting *United States v. Cunningham*, 679 F.3d 355, 374 (6th Cir. 2012), *cert den.*, 568 U.S. 1233 (2013)).

To the extent that Defendant requests exclusion of Abdallah's testimony on conduct outside of the limitations period, that testimony is relevant to the claims in the Second Superseding Indictment as it is a prelude to the charged conduct. For the reasons set forth above, testimony of the conduct at Eastside is inextricably intertwined with the allegations in the Second Superseding Indictment and will not be excluded.[4]

### IV.    The Government's Motions *in Limine*

<u>Motion 1</u>

The Government seeks to preclude Defendant from making any argument that because Medicare or Medicaid paid claims or failed to detect claims for fraudulent prescriptions, he could not have caused the submission of fraudulent claims or known that these were illegal practices. (ECF No. 51 at PageID. 199.) It

---

[4] In his reply brief, Defendant, for the first time, raises the issue of excluding the testimony of Defendant's colleague, Dr. Emilio Limchoa. (*See* ECF No. 64 at PageID. 443-44) (alterations added) ("[T]he government now seeks to introduce testimony from Dr. Emilio Limchoa concerning events prior to the charged conduct. . . . Limchoa should be precluded from testifying."). This argument is not properly before the Court as "the Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived." *Sherman v. United States*, No. 15-13837, 2017 WL 3765765, at *3 (E.D. Mich. Aug. 7, 2017) (alteration omitted) (citing *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006)). The Court will not consider Defendant's argument related to the exclusion of Dr. Limchoa's testimony as it is not properly before the Court.

further argues that these kinds of "blame the victim" defenses are irrelevant and improper.  (*See id.*)

Courts have routinely rejected the "blame the victim" argument in the criminal fraud context.  "A victim's own gullibility or even negligence is no defense to criminal fraud; . . . the focus is on the *defendant's* conduct."  *United States v. Higgins*, No. 22-3538, 2023 WL 6536752, at *3 (6th Cir. Oct. 6, 2023) (emphasis in original).  *See*, *e.g., United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) (footnote omitted) (quoting *United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980)) ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts."); *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (concluding that victim negligence is not a defense to criminal conduct); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct"); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) (" The victim's negligence is not a defense to criminal conduct").

This Court will do the same.  Therefore, evidence of the failure of Medicare or Medicaid to detect Defendant's scheme, as alleged in the indictment, is irrelevant and Defendant is precluded from presenting such evidence.

<u>Motion 2</u>

The Government seeks to preclude Defendant from introducing testimony related to a now-resolved civil matter where SA Pemberton was named as a defendant.  (*See* Case No. 22-cv-10424 (E.D. Mich.).)  Defendant has concurred with the relief sought, however, arguing that the conduct underlying the complaint in the civil matter may be admissible.  (*See* ECF No. 51 at PageID. 198-99.)

The complaint alleged that SA Pemberton, and others, engaged in misconduct during their investigation of Ali Makki ("Makki"), a government witness in this case.  Specifically, two pharmacies owned by Makki were under investigation by the U.S. Department of Health and Human Services (HHS) for potential healthcare fraud.  (*See* Case No. 22-10424 , Am. Compl. ECF No. 2 ¶ 37.)  To determine if there was fraud, HHS relied on a Medicare Drug Integrity Contractor (MEDIC) to reconcile the pharmacies' purchase invoices with insurance claims for certain pharmaceuticals.  (*Id.* ¶ 40.)

According to the amended complaint, SA Pemberton allegedly made several knowing and intentional errors in gathering information for the reconciliation, which led to overstatement of the shortage calculated by MEDIC.  (*Id.* ¶ 158.)  Makki also alleges that either SA Pemberton or, another defendant, withheld exculpatory evidence obtained in an interview of a patient.  (*Id.* ¶ 148.)

The Court dismissed the complaint without prejudice and made no finding of misconduct against any of the defendants.  (*See* ECF Nos. 89-1, 89-2.)  It is not clear how the introduction of any such conduct by SA Pemberton in the dismissed action would make any material fact at issue in this case more or less likely to have occurred. The introduction of complaints and prior lawsuits against SA Pemberton would only serve to confuse the jury in this matter.  This evidence will be excluded except for the limited purpose of impeachment.

The Sixth Circuit has "consistently recognized the broad scope of allowable impeachment evidence and, more importantly perhaps, the significant discretion left to the trial court in this area." *United States v. Clingman*, 521 F. App'x 386, 395 (6th Cir. 2013) (quoting *United States v. Markarian*, 967 F.2d 1098, 1103 (6th Cir. 1992)).  A party's "introduction of evidence may render his prior acts relevant for impeachment purposes, 'thus making admissible what may not have been admissible otherwise' under Federal Rule of Evidence of 404(b)." *Id.* (citing *United States v. Jackson*, 95 F.3d 1153 (6th Cir. 1996) (unpublished table opinion)).

<u>Motion 3</u>

The Government seeks to introduce evidence of Defendant's gambling habits.[5] Specifically, it seeks to have Abdallah testify that Defendant talked about going to the casino and taking trips to Las Vegas when he received his alleged kickback payments.  (ECF No. 77 at PageID. 571.)  It also seeks to introduce evidence of Defendant's banking records which reveal cash withdrawals at casinos for amounts over $100,000.00.  (*See id.*)  The Government argues that Defendant's gambling habits are relevant to his motive to commit the crimes charged in the indictment.  (*See id.* at PageID. 570.)

Trial courts have broad discretion in determining whether to admit evidence based on considerations of relevance and prejudice.  *United States v. Jackson–Randolph*, 282 F.3d 369, 376 (6th Cir. 2002).  Relevant evidence is admissible unless otherwise prohibited.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the

---

[5] The Government states that Defendant opposed the relief sought.  (*See* ECF No. 77 at PageID. 570.).  Defendant also expressed his opposition to the Government's motion *in limine* in a separate motion to dismiss for vindictive prosecution.  (*See* ECF No. 76 at PageID. 576.)  Neither is a substitute for filing an opposition and the Court will consider the motion unopposed.  *See Avery v. Neverson*, No. 18-11752, 2023 WL 2263854, at *4 (E.D. Mich. Feb. 28, 2023) ("Because Plaintiff has not responded to Defendant's motion *in limine*, Defendant's motion can and will be construed as unopposed."), *rev'd on other grounds*, 2023 WL 3467726 (E.D. Mich. May 13, 2023). Moreover, as noted above, Defendant's recently filed response to the motion on April 28, 2024, is untimely.

evidence." Fed. R. Evid. 401(a).  Evidence of "other acts" are covered by Rule

404(b), which provides:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).  The Government seeks to introduce evidence of

Defendant's gambling, which would be an "other act," pursuant to Rule 404(b).

This Circuit requires a three-step inquiry as to admissibility of 404(b).  That

inquiry consists of: (1) whether sufficient evidence exists that the prior act

occurred; (2) whether the "other act" is admissible for a proper purpose under Rule

404(b); and (3) whether the "other act" evidence is more prejudicial than probative

under Rule 403.  *United States v. Poulsen*, 655 F.3d 492, 508 (6th Cir. 2011)

(citing *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001)).

Starting with the first inquiry, whether sufficient evidence exists that the

prior act occurred, the Government argues that they have obtained banking records

that reveal over $100,000.00 in cash withdrawals at casinos between 2014 and

2018, the time frame of the acts alleged in the indictment.  (ECF No. 77 at PageID.

571.)  It further alleges that Abdallah will testify that Defendant talked about going

to the casino and trips to Las Vegas when we would get his alleged kickback

payments from Abdallah.  (*Id.*)  Therefore, this first element is satisfied.  There is

sufficient evidence to that the prior act, Defendant's gambling, has occurred.

> With regard to the second inquiry:

> Evidence of other acts is probative of a material issue other than
> character if (1) the evidence is offered for an admissible purpose, (2)
> the purpose for which the evidence is offered is material or in issue, and
> (3) the evidence is probative with regard to the purpose for which it is
> offered.

> *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (alterations,

additional quotation marks and citation omitted).

Whether the "other act" is admissible for a proper purpose under Rule

404(b), the Government argues that they are seeking to introduce evidence of

Defendant's gambling to "show motive for engaging in the kickback conspiracy."

(*Id.* at PageID. 572.)  They further argue that they are not seeking to introduce

evidence of Defendant's gambling for propensity purposes.  (*Id.*)  The first element

of this second inquiry is satisfied as motive is a permitted purpose to introduce an

"other act" under Rule 404(b).  *See* Fed. R. Evid. 404(b)(2) ("This evidence may

be admissible for another purpose, such as proving motive.")

Turning to the second element of this inquiry, whether the purpose for which

the evidence is offered is material or in issue, an element is "in issue" for purposes

of 404(b) admissibility if "the defendant has placed, or conceivably will place, [it]

in issue," or if it is among the statutory elements the government must prove.

*United States v. Ray*, 549 F. App'x 428, 432 (6th Cir. 2013) (alteration added) (emphasis omitted) (quoting *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996)).  The Government argues that evidence of Defendant's gambling is directly probative of his motive to participate in a kickback conspiracy.  (ECF No. 77 at PageID. 573.)

In this Circuit, the Government may "offer evidence necessary to anticipate a defendant's tactics at trial."  *Ray*, 549 F. App'x at 432.  The Government "[is] permitted under Rule 404(b) to admit evidence necessary to counteract the effects of a potential eleventh-hour introduction by the defense because it [is] 'conceivable' that the defendant" could assert a lack of motive to engage in a kickback conspiracy argument.  *Id.* (alterations added).  This second element is, therefore, satisfied as Defendant conceivably could raise the issue of motive, or lack thereof, at trial.

Turning to the last element of this inquiry, whether the evidence is probative with regard to the purpose for which it is offered, the Government argues that Defendant made statements that he referred to his kickback payments as his "fun money."  (ECF No. 77 at PageID. 571.)  It further argues that Defendant would talk about going to the casino and trips to Las Vegas after picking up his alleged kickback payments.  (*Id.*)  This evidence is clearly probative of the issue for which

18

it is offered: that Defendant allegedly took the kickback payments and engaged in gambling activity.  This element is also satisfied.

Turning to the final inquiry, whether the probative value of the evidence is substantially outweighed by its potential prejudice.  If evidence is substantially more prejudicial than probative, it should be excluded.  *Adams*, 722 F.3d at 812. The Sixth Circuit has cautioned that different forms of unfair prejudice may arise from the introduction of unduly prejudicial evidence, such as the risk that the jury will convict a defendant because of his prior, instead of charged, conduct, or the jury could generalize the defendant's earlier bad act into bad character, and he is guilty of the bad act now charged.  *United States v. Asher*, 910 F.3d 854, 861-62 (6th Cir. 2018).

To weigh the probative versus prejudicial effect of evidence, a court should consider the evidentiary alternatives available to the prosecution.  *Id.* at 861 (citing *Old Chief v. United* States, 519 U.S. 172, 184 (1997)).  If there are less prejudicial alternatives available, the probative value of the prejudicial piece of evidence should be discounted.  *Old Chief*, 519 U.S. at 183.  The Court must also consider "whether a limiting instruction can mitigate the risk of prejudice." *Asher*, 910 F.3d at 861 (citing *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007)). "Limiting instructions should identify 'the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why the factor

19

is material, and warn the jurors against using the evidence to draw' improper inferences." *Id.* at 862 (quoting *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008)).

Here, neither party submits an alternative to the introduction of the gambling activity. As previously noted, Defendant does not oppose the motion. "[W]hile there is some possibility that jurors may have . . . negative opinions regarding gambling," the probative value of the gambling evidence to show Defendant's motive to participate in the alleged kickback conspiracy "substantially outweighs the potential for prejudice arising from the admission of this evidence." *United States v. Blanchard*, 618 F.3d 562, 570 (6th Cir. 2010) (finding the district court did not abuse its discretion by introducing evidence of defendant's gambling in tax evasion trial).

Further, any prejudice resulting from the introduction of this evidence can be cured by a jury instruction. Jurors are presumed to understand and follow instructions by the Court. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Therefore, evidence of Defendant's gambling activity will not be precluded.

### Motion 4

The Government argues that Defendant should be precluded from arguing on direct or cross-examination specific legitimate practices such as: (1) legitimate

billing; (2) the provision of legitimate services; and (3) legitimate referrals for medically necessary prescription medication.  (ECF No. 89 at PageID. 684.)  It argues that such evidence is not probative of the issues at trial and will confuse or mislead the jury.  (*See id.*)

Defendant's legitimate billing, legitimate referrals of medically necessary prescriptions, and legitimate provisions of services, are irrelevant and unrelated to the issues of whether he conspired to commit health care fraud, committed health care or wire fraud, or received kickbacks as alleged in the indictment.  *See United States v. Pappas*, No. 17-20465, 2022 WL 1506278, at *16 (E.D. Mich. May 12, 2022) (rejecting defendant's argument that a patient's testimony that he offered "individualized care" should have been admitted to dispel the government's charge that "every patient was treated the same" for billing purposes in a health care fraud case); *United States v. Householder*, No. 1:20-77, 2022 WL 17600159, at *5 (S.D. Ohio Dec. 13, 2022) (finding defendant's proffered evidence of "above-board [political] contributions" irrelevant and inadmissible to the Government's racketeering conspiracy charges).  Evidence of Defendant's legitimate practices would serve to only confuse the jury and must be excluded pursuant to Rule 403.

<u>Motion 5</u>

The Government argues that Defendant should be precluded from referencing the now-resolved, Virgin Islands action.  (ECF No. 89 at PageID. 686.)

The Virgin Islands action stemmed from a four-count complaint alleging, *inter alia*, breach of contract filed by Abdallah.  (*See* Case No. ST-13-CV-00227, Super. Ct. V.I.)  In short, the Virgin Islands action involved a dispute over the interest of a gas station and land in St. Thomas, Virgin Islands.  The action was ultimately settled.  (*See* ECF No. 89-3.)  It is unclear how testimony regarding the Virgin Islands action would make any element or fact more or less likely to have occurred in this matter.  With the exception of the Court's broad discretion to introduce evidence for impeachment purposes, as mentioned in its analysis of Motion 2, *surpa*, this evidence will be excluded.

<u>Motion 6</u>

Lastly, the Government argues that Defendant should be precluded from eliciting testimony, or otherwise producing evidence, on the following topics: (1) discovery disputes, including the timing of the production of records to the government by witnesses; (2) potential punishment or other consequences that might result from a conviction; and (3) defense counsel's personal opinion of, or relationship with, Defendant.

First, looking at whether the jury should be informed of discovery disputes between the parties, these disputes relate to legal issues and would not assist the trier of fact.  *See Nemir v. Mitsubishi Motors Corp.*, No. 96-75380, 2002 WL 482557, at *3 (E.D. Mich. Mar. 11, 2002) (alterations added) ("Discussion of pre-

22

trial discovery disputes will not assist the triers of fact in their determination[s]. . . . Such discussion lacks probative value."). As a result, the Government's request is granted. The parties are precluded from discussing discovery dispute issues before the jury.

Second, looking at the potential consequence of conviction, "the law is well settled in this regard," that juries are not to consider punishment. *United States v. Anderson*, 563 F. Supp. 3d 691, 697 (E.D. Mich. 2021) (citation omitted); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury."). Therefore, the Government's request is granted. The parties are prohibited from discussing the consequences of a verdict before the jury.

Third, with respect to counsel's personal opinions of Defendant, "[i]t is well established that the personal opinion of counsel has no place at trial." *Irick v. Bell*, 565 F.3d 315, 326 (6th Cir. 2009) (alteration in original) (quoting *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996)). Additionally, to the extent any comments regarding counsel's personal relationships with any witness "can be reasonably construed to be based on personal opinion," it is inappropriate for trial. *United States v. Bess*, 593 F.2d 749, 756–57 (6th Cir. 1979). Thus, the

Government's request is granted. Discussion of personal relationships between counsel and either witnesses or Defendant shall be excluded.

## V.    Conclusion

Accordingly, for the reasons set forth above, Defendant's motion *in limine* to preclude evidence of the Eastside conspiracy is denied.  Further, the Government's six unopposed motions *in limine* are granted with the exception that certain evidence may be introduced for impeachment purposes.

**IT IS ORDERED** that Defendant's motion *in limine* (ECF No. 52) is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motions 1, 3, 4, and 6 are **GRANTED**.

**IT IS FURTHER ORDERED** that the Government's Motions 2 and 5 are **GRANTED IN PART AND DENIED IN PART**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: April 29, 2024

24